**Sacramento HINOJOSA–PEREZ, Petitioner,**

**v.**

**Robert C. EDDY, District Director, Immigration & Naturalization Service, Respondent.**

**No. A98–0349 CV (JKS).**

United States District Court, D. Alaska.

April 12, 1999.

Jeffrey Scott Moeller, Stock & Moeller, Anchorage, AK, for Petitioner.

Susan Lindquist, Asst. U.S. Atty., Anchorage, AK, Alice E. Loughran, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

SINGLETON, Chief Judge.

Sacramento Hinojosa–Perez ("Hinojosa–Perez") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 asking that this Court admit him to bail pending resolution of his deportation proceeding. *See* Docket No. 1. *See also* Docket No. 6 (Memorandum). Defendant Immigration and Naturalization Service ("INS") opposes the petition arguing that this Court lacks jurisdiction and that even if the Court had jurisdiction the petition should be denied on the merits. *See* Docket No. 7. The Honorable Harry Branson, United States Magistrate Judge, recommends that the Court deny Hinojosa–Perez's petition. *See* Docket Nos. 16 (Initial Recommendation), 18 (Final Recommendation). The magistrate judge concludes that jurisdiction exists under § 2241, but that the facts of this case do not warrant Hinojosa–Perez's release from INS custody. Hinojosa–Perez has filed both a partial and a supplemental objection to the report and recommendation. *See* Docket Nos. 17 (Partial Objection), 19 (Supplemental Objection).[1]

This Court has reviewed the record de novo and exercised its independent judgment. The Court agrees with the magistrate judge that Hinojosa–Perez's petition for writ of habeas corpus must be denied. However, in view of certain changes in the law which have transpired since the time when the magistrate judge issued his report and recommendations, the Court will elaborate upon and clarify particular issues.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Hinojosa–Perez is a native and citizen of Mexico. He was the defendant in *United States v. Sacramento Hinojosa–Perez,* Case No. A98–0062 CR (JWS), in which he was convicted of illegally entering the United States. Hinojosa–Perez received a short sentence, the incarceration component of which expired on October 16, 1998, and he was released into INS custody on that date.

Hinojosa–Perez's deportation order, which is the basis for INS's detention of his person, is on administrative appeal to the Board of Immigration Appeals. Because Hinojosa–Perez's deportation order was entered against him *in absentia,* execution of that order is stayed as a matter of law until such time as the Board of Immigration Appeals rules on his appeal. *See* 8 C.F.R. § 3.23(b)(4)(iii)(C). As a result, INS is presently unable to deport Hinojosa–Perez.

On October 22, 1998, Hinojosa–Perez requested a bail hearing from the Immigration Court. The Immigration Court ruled that it did not have jurisdiction to hear Hinojosa–Perez's request for bail because INS was reinstating a prior deportation order under 8 C.F.R. § 241.8 and 8 U.S.C. § 1231(a)(5). The Immigration Judge also stated that under no circumstances would she admit Hinojosa–Perez to any kind of release from INS custody because he had been convicted of illegal reentry. Hinojosa–Perez also appealed this decision to the Board of Immigration Appeals, and that appeal is apparently still pending.

In this action, Hinojosa–Perez argues that the actions of INS have placed him in a situation where he is being indefinitely detained in jail without any ability to obtain admission to bail or other conditions of relief pending the outcome of his administrative appeal of the deportation order

---

1. The parties have also filed with the Court a flurry of "Supplemental Authorities" supporting their respective positions. *See* Docket Nos. 21, 22, 24, 25. .

2. The factual and procedural summary set forth herein is based primarily upon the allegations set forth in Hinojosa–Perez's petition for writ of habeas corpus. *See* Docket No. 1.

entered against him *in absentia.* Hinojosa–Perez argues that the actions of INS have unconstitutionally deprived him of due process, and that INS's actions constitute an arbitrary, unconstitutional restraint on his liberty.

## DISCUSSION

### 1. *Subject Matter Jurisdiction*

■ Hinojosa–Perez's petition challenges his detention pending resolution of his administrative appeal of the deportation order entered against him *in absentia.* INS argues that this Court lacks jurisdiction to review Hinojosa–Perez's challenge to his detention; Hinojosa–Perez insists that the Court has jurisdiction. Relying on a Ninth Circuit decision which has since been vacated, the Magistrate Judge sided with Hinojosa–Perez and concluded that jurisdiction does lie in this Court. Recent amendments to immigration and habeas corpus statutes have generally prompted tremendous confusion in this area, and at the time when the parties submitted their briefs in this action, both parties referenced persuasive opinions supporting their respective positions on the threshold jurisdictional issue. A recent Supreme Court decision, however, has clarified any outstanding confusion. *See Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). It is now clear that jurisdiction does exist under § 2241 for this Court to entertain Hinojosa–Perez's petition.

Hinojosa–Perez's due process claim challenges his indefinite detention in INS custody, and it does not ask this Court to become involved in any way with the merits of his administrative appeal. INS relies on recent changes to the Immigration and Nationality Act ("INA"), enacted through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, Div. C, § 306, 110 Stat. 3009–546 (Sept. 30, 1996) (codified at 8 U.S.C. § 1252(g)), to advance its argument that only the Attorney General

has jurisdiction over the dispute at issue in this action. Indeed, the amended section 1252 broadly limits the availability of judicial review for individuals subject to general deportation orders to the courts of appeals. *See* 8 U.S.C. § 1252(a)(1) & (b). Relevant to this action, INA § 1252(g) places within the exclusive jurisdiction of the court of appeals review of final orders of removal:

> Except as provided in [section 1252] and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this act.

8 U.S.C. § 1252(g). *See generally Tam v. Reno,* No. C–98–2835 MHP, 1999 WL 163055, at *3–*4 (N.D.Cal. Mar.22, 1999) (discussing recent statutory amendments).

Prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), and IIRIRA, "[a]liens without other recourse had traditionally been able to obtain review by habeas corpus, even in the face of statutory language precluding all other review." *Goncalves v. Reno,* 144 F.3d 110, 121 (1st Cir.1998) (citing *Heikkila v. Barber,* 345 U.S. 229, 233–35, 73 S.Ct. 603, 97 L.Ed. 972 (1953)), *cert. denied,* — U.S. —, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). Because the passage of AEDPA and IIRIRA affected significant changes in the scope of federal court review of INS decisions, some courts have concluded that their power to exercise jurisdiction under § 2241 over the habeas petitions of deportable and excludable aliens has been stripped. *See, e.g., LaGuerre v. Reno,* 164 F.3d 1035, 1040 (7th Cir.1998); *Richardson v. Reno,* 162 F.3d 1338, 1357 (11th Cir.1998), *petition for cert. filed,* 67 USLW 3561 (Feb. 23, 1999).

In the Ninth Circuit, separate three judge panels seemed to express fundamentally different views on the issue. *Compare Hose v. INS,* 141 F.3d 932 (9th Cir. 1998), *withdrawn and reh'g en banc granted,* 161 F.3d 1225 (9th Cir.1998), *with Magana–Pizano v. INS,* 152 F.3d 1213, 1216–17 (9th Cir.1998), *as amended,* 159 F.3d 1217 (9th Cir.1998), *vacated and remanded for reconsideration,* —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999).[3] The magistrate judge wrestled with these opinions in his initial report and recommendation. However, during the pendency of this action, as indicated in the citations above, *Hose* was withdrawn by the Ninth Circuit and the Supreme Court vacated *Magana–Pizano* and remanded it for reconsideration in light of *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). This Court is therefore essentially free to reconsider the issue of jurisdiction anew, taking into consideration the Supreme Court's decision in *American–Arab Anti–Discrimination Committee.*

Defining the parameters of the jurisdictional prohibition set forth in 8 U.S.C. § 1252(g), the Supreme Court rejected the contention that § 1252(g) "covers the universe of deportation claims," and imposed a much narrower interpretation. *See American–Arab Anti–Discrimination Committee,* 525 U.S. at ——–——, 119 S.Ct. at 941–43. The Court determined that "the provision applies to only three discrete actions that the Attorney General

may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 943 (quoting 8 U.S.C. § 1252(g)). Noting that there are obviously many other decisions or actions that may be part of the deportation process, the Court remarked that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *See id.*

In this action, Hinojosa–Perez maintains that his substantive due process rights are being violated by his current stay of indefinite incarceration. Hinojosa–Perez seeks to have this Court conclude that he is entitled to spend his time during the interim with his wife, a citizen of the United States residing in Anchorage who is apparently suffering from advanced diabetes. INS fears that if released on bail, Hinojosa–Perez will go into hiding in order to stay in the United States indefinitely.

Clearly, Hinojosa–Perez's petition does not in any way challenge the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders." *See American–Arab Anti–Discrimination Committee,* 525 U.S. at ——, 119 S.Ct. at 943. Hinojosa–Perez's claim concerns his detention while the administrative deportation process lasts, and it may be resolved without affecting pending proceedings.[4] Under substantially similar circumstances, the Seventh Circuit Court of Appeals recently concluded in view of *American–Arab Anti–Discrimination*

---

**3.** The *Hose* court concluded that the INA amendments repealed the remedy of habeas corpus in immigration cases as long as a right of direct review existed. *See Magana–Pizano,* 152 F.3d at 1217 (citing *Hose,* 141 F.3d at 935). Despite the *Hose* court's interpretation of "IIRIRA as eliminating all forms of judicial review in immigration cases, including the remedy of habeas corpus," the *Magana–Pizano* court nonetheless concluded that "the district court retains jurisdiction under 28 U.S.C. § 2241 when the petitioner has no other judicial remedy." *See id.* at 1216. In reaching this decision, the *Magana–Pizano* court determined that the *Hose* court's interpretation of

the jurisdictional provisions of AEDPA and IIRIRA to have foreclosed all habeas review in immigration cases "violate[d] the Suspension Clause of the United States Constitution by denying habeas relief in cases where no other avenue of judicial review exists." *See id.* at 1217 (citing *Hose,* 141 F.3d at 935).

**4.** Indeed, Hinojosa–Perez has remarked on numerous occasions in his pleadings that he does not want the Court to become involved with the merits of his administrative appeal. *See, e.g.,* Docket No. 6 at 2.

*Committee* that it had jurisdiction to review a petition for release on bail pending the administrative resolution of a deportation order. *See Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999). This Court therefore concludes that it does indeed have jurisdiction under 28 U.S.C. § 2241 to evaluate Hinojosa–Perez's petition. *See also Goncalves,* 144 F.3d at 120 (neither AEDPA nor IIRIRA expressly repeal the availability of habeas review of deportation or removal orders); *Henderson .v. INS,* 157 F.3d 106, 118–20 (2nd Cir.1998) (same), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999).

### 2. The Merits of Hinojosa–Perez's Claim

■ INS is unable to predict with any certainty when Hinojosa–Perez's administrative appeal will finally be resolved. It is therefore most sensible to evaluate Hinojosa–Perez's petition acting under the assumption that his detention is "indefinite." Indefinite detention is not precluded by the immigration statutes. *See Hermanowski v. Farquharson,* 39 F.Supp.2d 148, 155 (D.R.I. 1999) (citing *Zadvydas v. Caplinger,* 986 F.Supp. 1011, 1025 (E.D.La.1997); *Tran v. Caplinger,* 847 F.Supp. 469, 473–74 (W.D.La.1993)). The question presented in this action is whether Hinojosa–Perez's detention for an indefinite period can survive constitutional scrutiny.

■ Removal of aliens is a power inherent in every sovereign and is largely exercisable by the political branches of government. *See Mathews v. Diaz,* 426 U.S. 67, 80–81, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Carlson v. Landon,* 342 U.S. 524, 534, 72 S.Ct. 525, 96 L.Ed. 547 (1952). As a political prerogative that lies near the core of national sovereignty, it is "largely immune from judicial control." *See Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953). Accordingly, judicial review of such decisions must be restrained, *see Fiallo .v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), but clearly the power of executive branch officers to detain aliens pending deportation is subject to the counter-weight of due process. Relevant to this action, the substantive due process component of the Fifth Amendment guards against governmental interference with those rights "implicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 324–25, 58 S.Ct. 149, 82 L.Ed. 288 (1937), and prohibits the government from engaging in conduct that "shocks the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). *See generally Hermanowski,* 39 F.Supp.2d at 155–56.[5]

---

5. Hinojosa–Perez is not deprived of all of the protections of the Due Process Clause of the Fifth Amendment merely because he is not a citizen of the United States. *See Plyler v. Doe,* 457 U.S. 202, 210–12, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (holding that the Fifth Amendment's Due Process Clause applies to all persons present within the territorial confines of the United States). Indeed, as a deportable alien, Hinojosa–Perez is afforded greater procedural and substantive rights than excludable aliens. *See Landon v. Plasencia,* 459 U.S. 21, 32–33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). The Supreme Court has examined with some frequency the range of procedural due process rights guaranteed deportable aliens by the Constitution. *See, e.g., Landon,* 459 U.S. at 23–33, 103 S.Ct. 321; *Bridges v. Wixon,* 326 U.S. 135, 153–54, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); *The Japanese Immigrant Case,* 189 U.S. 86, 100–01, 23 S.Ct. 611, 47 L.Ed. 721 (1903). The exact nature of a deportable alien's right to substantive due process is admittedly far less clear.

In *Hermanowski,* a decision referenced by Hinojosa–Perez in one of his notices of supplemental authority, Chief Judge Lagueux of the District of Rhode Island extensively discussed "the terra incognita of this unresolved jurisprudence." *See* 1999 WL 111520, at *9–*11. Cognizant that courts must "exercise the utmost care" when exploring the boundaries of substantive due process rights, *see Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), Chief Judge Lagueux nevertheless persuasively established that deportable aliens enjoy some measure of the due process right to be free from unreasonable detention by the government. *See Hermanowski,* at 156 (citing *Reno v. Flores,* 507 U.S. 292, 315, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (O'Connor, J.,

Similar to the test established for evaluating the due process rights of pre-trial detainees in the criminal context, *see Bell v. Wolfish*, 441 U.S. 520, 535–40, 99 S.Ct. 1861, 60 L.Ed.2d 447, (1979), federal courts addressing the constitutionality of indefinite detention of aliens have generally concluded that a regulatory detention must not be imposed for punitive purposes. *See, e.g., Hermanowski*, at 156–57; *Tam*, 14 F.Supp.2d at 1191; *Zadvydas*, 986 F.Supp. at 1025–26. In other words, courts must decide whether the confinement at issue is imposed for purposes of punishment or whether the confinement is but an incident of some other legitimate governmental purpose. Courts having considered the issue have consistently held that deportation is not a criminal proceeding and is not punitive in purpose. *See INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *Carlson*, 342 U.S. at 537, 72 S.Ct. 525. Rather, detention pending deportation is merely an incident to the civil deportation process, and if a substantive due process violation is to be found in the practice, it can only be based upon a finding that detention under a particular set of factual circumstances is excessive in relation to the governmental purpose behind detention in that particular context. "Such a determination is highly dependent on the unique facts of each case." *Hermanowski*, at 156.

■ Hinojosa–Perez has spent nearly six months in INS custody awaiting a decision on his administrative appeal. Unless he is able to convince the Attorney General otherwise, *see* 8 C.F.R. §§ 241.4 & 241.5, he faces the very realistic prospect of remaining in custody until his appeal is finally ruled upon. As previously indicated, neither party has offered an intelligent estimate of when that ruling will issue from the Board of Immigration Appeals. Nevertheless, it does not appear that the facts of this action give rise to a substantive due process violation.

■ As stated in *Hermanowski*, the "crucial factor" for a court to consider in determining whether detention pending deportation amounts to a substantive due process violation is "the potential for deportation at some time in the foreseeable future." *See* 39 F.Supp.2d at 161. In *Hermanowski*, given the stalemate in international relations between the United States and Poland, INS was unable to deport the petitioner despite repeated diplomatic efforts. Poland would simply not accept the petitioner, he had already spent twenty-eight months in INS custody on the tail end of a criminal sentence, and there was no prospect of securing Poland's agreement to accept the petitioner at any time in the foreseeable future. Under these circumstances, taking into consideration the fact that the petitioner risked spending "the rest of his life" in INS custody, the district court found a substantive due process violation and ordered the petitioner released from custody. *See id.* at 161–62. *See also Tam*, 14 F.Supp.2d at 1189–91 (conditionally releasing alien who had been in INS custody awaiting repatriation to Vietnam for more than three years pending ruling on his habeas petition).

In contrast, Hinojosa–Perez literally holds the keys to his own release. Hinojosa–Perez can withdraw his administrative appeal and return to his native land of Mexico, thus ending his detention immediately. Federal courts having considered analogous circumstances are in agreement that aliens who insist on postponing their own deportation have "no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Parra*, 172 F.3d 954, 957. *See also*

concurring) (declaring that a juvenile alien has a "core liberty interest in remaining free from institutional confinement")). *See also Tam v. INS*, 14 F.Supp.2d 1184, 1191

(E.D.Cal.1998) (finding deportable aliens have substantive due process rights "extending at least to the rights enunciated in the Fifth Amendment").

*Balogun v. INS,* 9 F.3d 347, 350–51 (5th Cir.1993) ("No court that has considered the issue has held that the INS must release a deportable alien from detention if the alien engages in conduct which prolongs his detention"); *Doherty v. Thornburgh,* 943 F.2d 204, 208–09 (2nd Cir.1991) ("[F]rom the outset of his detention, Doherty has possessed, in effect, the key that unlocks his prison cell ... [I]f Doherty had agreed to deportation in the first place, he would not have been detained at MCC for the past eight years."); *Dor v. District Director, INS,* 891 F.2d 997, 1002–03 (2nd Cir.1989) ("Dor is largely responsible for the very delay of deportation of which he complains.").

The United States has an entirely valid interest in maintaining Hinojosa–Perez's detention due to the intractable problem of aliens in Hinojosa–Perez's situation absconding, *see, e.g.,* 62 Fed.Reg. 10,312, 10,-323 (1997) (noting that "nearly 90 percent" of those aliens released from custody pending removal proceedings "abscond and are not removed from the United States"), and the fact that Hinojosa–Perez has somewhat of a history of flouting the United States' immigration laws.[6] In contrast to the petitioners in *Hermanowski* and *Tam,* who were respectively precluded from returning to their homelands of Poland and Vietnam because of circumstances entirely beyond their own control, Hinojosa–Perez is a citizen of Mexico and there is nothing other than his pending administrative appeal standing in the way of his release. Under these circumstances, this Court concludes that Hinojosa–Perez's petition for writ of habeas corpus must be denied.

**IT IS THEREFORE ORDERED:**

Hinojosa–Perez's petition for writ of habeas corpus (**Docket No. 1**) is **DENIED.** Judgment shall be entered in accordance with the terms of this order dismissing this action with prejudice.

---

**6.** The government deported Hinojosa–Perez in 1995 on the basis of his illegal status. Shortly after his deportation, he reentered the United States illegally in August 1996, and again in January, 1998. Further, in this country, in addition to his conviction in this Court for illegal reentry, Hinojosa–Perez has accumulated a criminal history including convictions for assault, shoplifting, DWI and resisting arrest.