**Hilario Gerardo CUESTA MARTINEZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. CIV.A. 1:CV–99–1881.

United States District Court, M.D. Pennsylvania.

May 17, 2000.

Hilario Cuesta–Martinez, Norristown, PA, pro se.

Kate L. Mershimer, U.S. Attorneys Office, Harrisburg, David Barasch, [pro se], U.S. Attorney's Office, Harrisburg, PA, for Immigration and Naturalization Service, respondents.

*MEMORANDUM*

CALDWELL, District Judge.

I. *Introduction.*

Hilario Gerardo Cuesta Martinez, a deportable alien, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241. The petitioner contends that his prolonged detention in INS custody awaiting deportation while the INS finds a country that will accept him violates his right to procedural and substantive due process under the fifth amendment.

We are considering the report of the magistrate judge, dated January 6, 2000. The report recommends that the petition be denied. The petitioner has filed objections to the report.

II. *Background.*

From the submissions of the parties, the following appears to be an accurate statement of the case. Petitioner is a citizen of Cuba who entered the United States on July 2, 1971. On August 17, 1977, he became a lawful permanent resident retroactive to November 5, 1973.

On September 15, 1988, he was convicted in New York State of attempted criminal possession of a controlled substance, cocaine. He was sentenced to one and one-half to three years. On April 9, 1992, he was again convicted in New York State of attempted criminal possession of a controlled substance. He was sentenced to seven and one-half to 15 years.

On March 2, 1994, the INS issued an order to show cause and notice of hearing. This form notified Cuesta Martinez that the government intended to deport him on the basis of his September 1988 drug conviction.

On October 20, 1994, an immigration judge ordered petitioner's deportation to either South Africa or Cuba. On March 29, 1995, the Board of Immigration Appeals denied Cuesta Martinez's appeal.

On November 12, 1998, petitioner was released from his state sentence and taken into INS custody. At some point he was transferred to York County Prison, York, Pennsylvania, while awaiting deportation to a country that would accept him. (Petitioner filed this petition while he was at that prison.) On March 5, 1999, South Africa refused him entry.

Petitioner has had three custody reviews. On December 22, 1998, parole pending deportation was denied. Neither party has indicated whether any statement of reasons was given. On April 26, 1999, another custody review was conducted. On June 1, 1999, the INS denied release in a form letter, stating:

> Your file was reviewed on 4/26/99 for possible release because you have a final order and that order is over ninety (90) days old. Unfortunately, at this time, we have determined that your case does not meet the criteria for further review for release. You may appeal the District Director's decision to the Board of Immigration Appeals. Your file will be reviewed again in six (6) months.

(Respondent's exhibit 4).

A material reason for the decision was apparently the impressions of the interviewing officer who reported:

> Subject has demonstrated a pattern for criminal activity up until his last arrest.

Drugs played a large part of his lifestyle and activities. If he is released he will probably return to drug dependency and crime.

(Petitioner's memorandum in objection, exhibit 1).

Sometime in early December 1999, the INS notified Cuesta Martinez that he would be receiving another custody review on December 18, 1999. This notice informed the petitioner that his custody would be evaluated using the factors listed in 8 C.F.R. § 241.4 and 8 C.F.R. § 241.5. (The only addition the notice made to the factors was a specific reference under factor four to any history of escapes.) [1]

On April 27, 2000, we ordered the respondent to file a copy of its written notification of its December 18 custody review. The respondent replied that it had not yet prepared the written notification, and it explained the delay by way of an unsworn declaration from a supervisory INS officer. [2]

After the December 18 interview, the INS interviewer had concluded that petitioner was a poor candidate for release. However, the interviewer's first-line supervisor did not concur in the evaluation and recommended release under supervision. A decision was made to obtain a psychological evaluation of the petitioner to assist in making the decision. The evaluation took place on January 31, 2000, about three weeks after the custody review, but the psychologist did not submit his report until May 9, 2000. The INS represents

---

1. Section 241.4 lists the following factors for considering whether an alien should be released pending removal:

   (1) The nature and seriousness of the alien's criminal convictions;
   (2) Other criminal history;
   (3) Sentence(s) imposed and time actually served;
   (4) History of failures to appear for court (defaults);
   (5) Probation history;
   (6) Disciplinary problems while incarcerated;

   (7) Evidence of rehabilitative effort or recidivism;
   (8) Equities in the United States; and
   (9) Prior immigration violations and history.

   Section 341.5(a)(2) lists as a condition of release that the alien cooperate in obtaining travel documents.

2. In accord with the Interim Rules, the written notification is supposed to be completed within 30 days of the custody review and sent to the alien. *See* appendix to *Chi Thon Ngo, supra.*

that it is currently attempting to make a prompt custody decision.

Cuesta Martinez has filed certain records from his New York incarceration to support his contention that he would not be a danger to the community if released on bond. These records show that he satisfactorily completed a substance abuse program, a vocational course as a tape librarian, a vocational course in basic legal research and law library management. Additionally, he had earned good-time credits that shortened his sentence and had a satisfactory disciplinary record.

### III. *Discussion.*

Cuesta Martinez's physical presence in the United States makes him a "deportable" alien rather than an "excludable" one. As the case law has developed, the difference between these two classes of aliens is important to the due process analysis, so we preface our discussion by distinguishing between them.

The distinction between a deportable alien and an excludable one arises from statutory law in place before the 1996 amendments to the immigration law and depends on whether the alien has made a successful entry into the United States, regardless of whether the entry was legal or illegal. *Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246, 1248 (1958); *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956, 963 (1953). An alien past the point of entry and physically present in the country was statutorily entitled to a "deportation hearing." *Gisbert v. U.S. Attorney General,* 988 F.2d 1437, 1440 (5th Cir.1993). He was a "deportable" alien. An alien at the border and seeking entry was statutorily entitled only to an "exclusion hearing." *Leng May Ma, supra; Gisbert, supra.* He was an "excludable" alien. An excludable alien may be physically allowed into the country while his admission is being considered, but under the "entry fiction" is still considered to be at the border awaiting entry. *Chi Thon Ngo v. INS,* 192 F.3d 390, 397 (3d Cir.1999). Under this scheme, a permanent resident alien qualifies as a deportable alien because he has successfully entered the country.

As the Third Circuit noted in *Chi Thon Ngo,* the terminology was recently changed by the 1996 amendments. Deportation is now "removal." An excludable alien is now an "inadmissible" alien although an inadmissible alien now includes an alien unlawfully in the country even if he has successfully entered it. *See* 5 Charles Gordon et al., Immigration Law and Procedure § 64.01[2], at 64–4 (1999). This change in terminology does not affect our analysis of Cuesta Martinez's claim since under the old and new statutes, having at one point been a legal resident, he is a deportable alien.

Cuesta Martinez asserts that his continued detention violates procedural and substantive due process because his removal is not likely in the near future. Hence, his detention now constitutes punishment. In opposition, the government argues that *Chi Thon Ngo, supra,* establishes that there is no due process violation here.

*Chi Thon Ngo* held that the indefinite detention of an excludable alien when the INS cannot find a country that will accept him does not violate due process when the alien receives periodic reviews that assess his current danger to the community or risk of flight. The court specifically limited its holding to excludable aliens, not deportable ones. 192 F.3d at 398 n. 7. Nonetheless, the respondent contends it applies here. The magistrate judge agreed with this argument and recommended that we deny the writ.

Petitioner counters this argument by alluding to *Binh Phan v. Smith,* 56 F.Supp.2d 1158 (W.D.Wash.1999), although he does not cite the case directly. In *Binh Phan,* a five-judge court held that a deportable alien had a due process right to release on bond when there is no realistic

chance of deportation even if he is a danger to the community or a risk of flight.

*Binh Phan* has been followed in this district by *Sombat Map Kay v. Reno,* 94 F.Supp.2d 546 (M.D.Pa.2000)(Rambo, J.), which distinguished *Chi Thon Ngo* because that case dealt with an excludable alien. *Sombat Map Kay,* in accord with *Binh Phan,* balances the likelihood of deportation against the alien's risk of flight and risk to the community. When the likelihood of deportation is slight, as it is in cases where the government cannot find a country that will accept the alien, the government's interest in detention is considered to be weak, if not nonexistent. *Id.,* 2000 WL 432606, at *5. In these circumstances, the alien's liberty interest in being free from incarceration outweighs as a matter of law the government's interest in detention, even if there is evidence that the alien is a risk to the community, or possibly a risk of flight. *Id.,* 2000 WL 432606, at *6.

Other courts have decided that deportable aliens have no greater rights than excludable aliens in these circumstances. Two courts of appeal have addressed the issue. In *Zadvydas v. Underdown,* 185 F.3d 279 (5th Cir.1999), the Fifth Circuit decided that both sets should be treated the same for due process purposes. Crucial to the court's reasoning was its belief that both sets of aliens were in the same constitutional position by having lost their right to remain in the country. The Fifth Circuit rejected *Binh Phan,* which had been decided about a month earlier. *See* 185 F.3d at 297 n. 20.

Further, relying on *Gisbert v. U.S. Attorney General,* 988 F.2d 1437 (5th Cir. 1993), circuit precedent providing the same result for excludable aliens, it also held that a deportable alien's due process rights are not violated by indefinite detention as long as there was still a possibility he could be deported and he receives periodic reviews of his status that would allow his release if "he is no longer a threat to the community or a flight risk." *Id.* at 291,

297. *Zadvydas* thus essentially extends *Chi Thon Ngo*'s holding to deportable aliens.

*Zadvydas*'s conclusion that the two sets of aliens are equivalent for due process purposes was followed in *Duy Dac Ho v. Greene,* 204 F.3d 1045, 1059 (10th Cir. 2000). It was also anticipated in *Le Dinh Tran v. Caplinger,* 847 F.Supp. 469 (W.D.La.1993) (cited in *Zadvydas* ).

However, *Zadvydas* has not persuaded the district courts in *Sombat Map Kay* and similar cases. These courts have refused to follow it, preferring instead *Binh Phan*'s analysis. In addition to *Sombat Map Kay,* the case are: *Hoang Manh Nguyen v. Fasano,* 84 F.Supp.2d 1099 (S.D.Cal.2000); *Sivilay Sengchanh v. Lanier,* 89 F.Supp.2d 1356 (N.D.Ga.2000); *Pesic v. Perryman,* 1999 WL 639194 (N.D.Ill.1999); *Hermanowski v. Farquharson,* 39 F.Supp.2d 148 (D.R.I.1999); and *Hinojosa–Perez v. Eddy,* 55 F.Supp.2d 1001 (D.Alaska 1999). *See also Thien Van Vo v. Greene,* 63 F.Supp.2d 1278 (D.Colo. 1999).

The differences can be material. Indeed, the analyses are often mirror images of each other. Under *Sombat Map Kay, Thien Van Vo,* and *Binh Phan,* release on bond is warranted if deportation is not likely to occur in the near future even if the alien is a flight risk or danger to the community. In contrast, under *Chi Thon Ngo* and *Zadvydas,* prolonged detention is permitted, even if deportation remains only a remote possibility, as long as periodic reviews establish the alien is currently a flight risk or danger to the community.

■ Because *Zadvydas* has the better reasoning, we conclude that deportable aliens have no greater constitutional rights in this context than excludable aliens. In *Zadvydas,* the Fifth Circuit stated, in part:

In the circumstances presented here, the national interest in effectuating deportation is identical regardless of whether the alien was once resident or excludable. When a former resident

alien is—with the adequate and unchallenged procedural due process to which his assertion of a right to remain in this country entitles him—finally ordered deported, the decision has irrevocably been made to expel him from the national community. Nothing remains but to effectuate this decision. The need to expel such an alien is identical, from a national sovereignty perspective, to the need to remove an excludable alien who has been finally and properly ordered returned to his country of origin. *See Fong Yue Ting,* [149 U.S. 698, 713, 13 S.Ct. 1016, 1022, 37 L.Ed. 905, 913]. 185 F.3d at 296 (brackets added). This reasoning was adopted in *Duy Dac Ho, supra.*

On the other hand, the cases that have fallen in behind *Binh Phan, supra,* principally rely on *Landon v. Plasencia,* 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), to support their position that deportable aliens have greater constitutional protection than excludable aliens.

*Binh Phan*'s reasoning is illustrative:

An excludable alien seeking admission "requests a privilege and has no constitutional rights regarding his application." *Plasencia,* 459 U.S. at 32, 103 S.Ct. 321, 74 L.Ed.2d 21. But "[o]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." *Id.* Petitioners fall into the latter category. No authority supports the government's position that aliens somehow "assimilate" to excludable status once they have been ordered deported, thereby relinquishing their constitutional rights. Petitioners are all long-time permanent legal residents of the United States and, as such, are "persons" entitled to the protection of the Fifth Amendment, despite having been ordered deported.

56 F.Supp.2d at 1154 (footnote omitted).

The court's reliance on *Plasencia* is misplaced. As *Zadvydas* explained, *Plasencia* conferred procedural due process rights on a permanent resident alien attempting to contest her exclusion from the United States after a brief visit abroad. It was in this context, where the alien was contesting the termination of her right to live in the country, that the Supreme Court made its statement about ties to the country creating a changed constitutional status. In the instant case, and the others cited, the alien no longer has ties to the country. Those were severed by the final order of deportation. It is therefore difficult to see how the court in *Binh Phan* could conclude that deportable aliens fall into the category of those with ties to the United States.

That *Plasencia* is inapplicable here is made clear by a later passage in that case. In that passage, the Court stated that the procedures required by due process depended on "the interest at stake for the individual." 459 U.S. at 34, 103 S.Ct. at 330, 74 L.Ed.2d at 33. It identified Plasencia's interest as the "right to stay and live and work in this land of freedom . . . ." *Id.,* 103 S.Ct. at 330, 74 L.Ed.2d at 33 (quoted case and internal quotation marks omitted). But Cuesta Martinez and similarly situated deportable aliens are already beyond this point. Their ties to this country have already been severed. It is important to remember here that these aliens are contesting only their detention pending deportation, not the government's right to remove them from the country.

*Sombat Map Kay* also cites *Leng May Ma v. Barber,* 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958). However, *Leng May Ma* is also distinguishable. That case dealt with whether the parole of an excludable alien into the country allowed her to assert rights under 8 U.S.C. § 1253(h), which, as it then read, permitted the Attorney General to withhold deportation for an alien who may be subject to persecution in her own country. The Court said the parole did not allow her to do so. The case has nothing to say about the due process rights of deportable aliens

whose right to remain in this country has been terminated.

Other cases focus on the law's acknowledgment of the deportable alien's physical presence in this country as distinguishing the deportable alien from the excludable one. This rationale can be traced to *Thien Van Vo. Thien Van Vo* criticized *Zadvydas* for "ignor[ing] the facts of admission" and "acquired constitutional status" arising from the deportable alien's successful entry into the country. 63 F.Supp.2d at 1283. (brackets added). Under *Thien Van Vo* and the cases that follow it on this point, *Hoang Manh Nguyen, supra,* and *Pesic, supra,* the two classes of aliens can be distinguished by the law's recognition of the deportable alien's physical presence in the country and its refusal to do so for the excludable alien based on the entry fiction.

This position fails to recognize that the entry fiction for excludable aliens is ultimately derived from the immigration law's treatment of aliens seeking entry into this country and not from constitutional law. *Zadvydas* pointed this out, by citing *Landon v. Plasencia.* 185 F.3d at 295 n. 18 ("In *Landon,* the Court noted that a resident alien had greater substantive rights under the immigration *statutes.*") (emphasis in original). The position thus wrongly injects the statutory distinction, made only for the purpose of determining what statutory immigration proceeding is available to an alien, into the constitutional analysis. The latter analysis asks only what liberty interest the alien can assert against indefinite confinement pending deportation. In the latter circumstances, whether an alien is deportable or excludable, the interest is the same, freedom from confinement.

We therefore agree with *Zadvydas*'s analysis. *See also Phong Doan v. INS,* 78 F.Supp.2d 1101, 1109 (S.D.Cal.2000) (siding with *Zadvydas* against *Binh Phan* and noting that "excludable and deportable aliens share [a] common trait: neither have the legal right to be physically present in the country") (brackets added). Since deportable aliens are the same as

excludable aliens in this context, it follows that *Chi Thon Ngo*'s approach is the appropriate framework for analyzing Cuesta Martinez's due process claim here.

■ As noted, under *Chi Thon Ngo,* prolonged detention is permitted, even if deportation remains only a remote possibility, as long as there are periodic reviews and the reviews establish the alien is currently a flight risk or danger to the community. The reviews must be "searching," 192 F.3d at 399, because once they become "grudging and perfunctory," 192 F.3d at 398, due process is not satisfied.

On this record, we cannot say that Cuesta Martinez's reviews have reached the point where they are no longer meaningful or searching. As noted above, Cuesta Martinez was taken into INS custody on November 12, 1998, about a year and seven months ago. He has had three custody reviews. The first two, on December 22, 1998, and April 26, 1999, could be criticized for being summary reviews based on his criminal record.

However, the INS did conduct the third review, the December 18, 1999 one, under the Interim Rules the Third Circuit found satisfactory in *Chi Thon Ngo.* And although the agency has not yet prepared the written notification required by the Rules, it has done so only because it wants a report on the psychological condition of the petitioner, a report delayed by the psychologist it had retained to conduct the examination. Further, the INS wanted this report because its officers had disagreed about Cuesta Martinez's suitability for release.

Under these circumstances, we cannot say that the petitioner's due process rights are being violated or that the INS is failing to give him a searching review. Chi Thon Ngo was in similar circumstances. He had been in INS custody since around the middle of 1995, some four years before the Third Circuit decided his case. He also had initially received what could be considered some cursory custody reviews.

Nonetheless, the Third Circuit did not decide that the writ should be granted outright. Instead, it conditioned the district court's grant of the writ upon the failure of the INS within 30 days to give the petitioner a custody review under the Interim Rules. Cuesta Martinez is already in the midst of such a review. Hence, we decline to grant the writ.

Of course, like the Third Circuit, if we discover that events would justify habeas relief for Cuesta Martinez under *Chi Thon Ngo, supra,* then we are prepared to entertain another habeas petition from him. In connection with any future petition, the INS may be required to show that it is making a good faith effort to remove Cuesta Martinez. *See Zadvydas, supra,* 185 F.3d at 297.

We will issue an appropriate order.

## ORDER

AND NOW, this 17th day of May, 2000, upon consideration of the report and recommendation of the magistrate judge, dated January 6, 2000, the petitioner's objections to the report (doc. 16 and 17), the petitioner's memorandum in objection (doc. 21), and upon independent review of the record, it is ordered that:

1. The petition for a writ of habeas corpus is denied.

2. Petitioner's motion (doc. 9) for an emergency hearing and his request (doc. 9) that the court hold the petition in abeyance pending until the INS concludes its review is denied.

3. A certificate of appealability is granted.

4. The Clerk of Court shall close this file.