**HENG MENG LIN, A–70–895–640, Petitioner,**

v.

**John ASHCROFT, U.S. Attorney General and Immigration and Naturalization Service, Respondents.**

**Civil Action No. 02–6643.**

United States District Court, E.D. Pennsylvania.

March 6, 2003.

Steven A. Morley, Bagia & Morley, Philadelphia, PA, for petitioner.

AUSA Stephen J. Britt, U.S. Attorney's Office, Philadelphia, PA, for respondents.

### *MEMORANDUM*

DuBOIS, District Judge.

Presently before the Court is petitioner Heng Meng Lin's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, challenging his continued detention by the Immigration and Naturalization Service ("INS") pending his removal to the People's Republic of China. The Petition is fully briefed. For the reasons set forth in this Memorandum, the Court grants the Petition in part—the INS is ordered to address petitioner's request for release pursuant to the procedures set forth in 8 C.F.R. § 241.13—and denies the Petition without prejudice in all other respects.

## I. BACKGROUND

■ Petitioner, Heng Men Lin ("Lin"), is a native and citizen of the People's Republic of China who entered the United States on or about September 1992, without inspection by an immigration officer. Lin was never paroled into the United States [1] and his application for asylum was denied in 1993. On April 30, 2001, Lin was convicted of smuggling Chinese aliens into the United States in the United States District Court for the Southern District of New York and sentenced, *inter alia*, to a term of imprisonment of six (6) months.

Upon completion of his prison sentence, Lin was taken into custody by the INS on September 27, 2001. On that same day,

Lin was issued a Notice which advised him that he was removable from the United States as an alien present without being admitted or paroled pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Lin was ordered removed from the United States to the People's Republic of China on January 27, 2002, by a United States Immigration Judge. Lin did not appeal the order and subsequently provided a Chinese passport to the INS. The agency scheduled Lin's removal for March 26, 2002.

On March 15, 2002, the INS sent Lin's passport to the Chinese Consulate–General in New York, requesting travel documents for Lin and two officers who would be escorting him to China; that request was denied. The Consulate–General claimed that Lin's passport was "bad." Accordingly, Lin's flight to China scheduled for March 26, 2002, was cancelled. Other attempts to secure visas for Lin and the two escorting officers from the Chinese Consulate–General were met with no response.

On June 27, 2002, five months after he was ordered removed to China, Lin submitted a request for release to the INS Headquarters Post–Order Detention Union ("HQPDU") pursuant to 8 C.F.R. § 241.13,[2] claiming, *inter alia*, that his removal to China was not likely in the reasonably foreseeable future because of China's refusal to issue him travel documents. Lin then filed the instant Petition in this Court on August 6, 2002, while detained at Berks County Prison, Pennsylvania. Lin

---

**1.** A "paroled" alien is one who is temporarily permitted to remain in the United States pending a decision on his application for admission to the United States. Although a "paroled" alien is "given liberty to roam the country," he is considered legally detained at the border within the custody of the INS as it determines his immigration status. *Chavez–Rivas v. Olsen*, 207 F.Supp.2d 326, 328 (D.N.J.2002). As such, "paroled" aliens are

deemed as having never been admitted into the United States. 8 U.S.C. § 1182(d)(5)(A).

**2.** As will be discussed below, *see infra* II.C., 8 C.F.R. § 241.13 sets forth procedures for determining whether there is a significant likelihood of removing a detained alien, subject to a final order of removal, in the reasonably foreseeable future.

is currently being held in INS custody at the Tangipahoa Parish Jail in Louisiana.

## II. DISCUSSION

Lin does not challenge the order of January 27, 2002, removing him to China; indeed, he has cooperated with the INS's efforts to remove him by providing his Chinese passport. Rather, Lin argues that the INS's failure to promptly remove him from the United States, resulting in his continued detention in INS custody, is violative of due process. Lin asserts that because the INS has been unable to obtain the travel documents necessary for his removal, there is no likelihood that he will be removed to China in the reasonably foreseeable future and his detention in the United States will be indefinite. Lin argues that although the INS have made "efforts" to obtain the necessary travel documents, his continued detention is constitutionally impermissible under the United States Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

### A. The *Zadvydas* Decision

The detention, release and removal of aliens ordered removed from the United States is governed by the provisions of 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231(a), the Attorney General shall remove an alien from the United States within ninety (90) days after the date that the removal becomes "administratively final." During the 90–day "removal period," detention of the alien is mandatory. 8 U.S.C. § 1231(a)(2). At the conclusion of the 90–day period, the alien may be released under the Attorney General's supervision, 8 U.S.C. § 1231(a)(3), or detained beyond the 90–day removal period

if he is "inadmissible under section 1182 of this title." 8 U.S.C. § 1231(a)(6).[3]

In *Zadvydas*, the Supreme Court addressed the issue of whether 8 U.S.C. § 1231(a)(6) authorizes the Attorney General to detain a removable alien indefinitely beyond the 90–day period. Reasoning that an alien's indefinite detention "would raise serious constitutional concerns," 533 U.S. at 682, 121 S.Ct. 2491, the Court concluded that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689, 121 S.Ct. 2491. The Court stated that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699, 121 S.Ct. 2491. The Supreme Court held in *Zadvydas* that a period of six (6) months is a presumptively reasonable period of detention. *Id.* at 701, 121 S.Ct. 2491. The Court further ruled that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Court made clear, however, that this "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

---

**3.** The Attorney General is also permitted to detain aliens beyond the 90–day removal period who violate criminal laws, threaten national security, or are deemed to be a risk to the community or unlikely to comply with the removal order. 8 U.S.C. § 1231(a)(6).

## B. The *Zadvydas* Decision Applies to Lin

■ The Government contends that the *Zadvydas* decision is inapplicable because Lin entered the United States without inspection in 1992 and is thus an "excludable" or "inadmissible" alien under 8 U.S.C. § 1182(a)(6)(A)(i). Lin responds by arguing that although he entered the United States illegally in 1992, because he effected entry into the United States he is a "deportable" alien within the ambit of *Zadvydas*. The Court agrees with Lin on this issue.

The Government's assertion of the inapplicability of the *Zadvydas* decision turns on the issue of whether Lin had successfully effectuated an "entry" in the United States in 1992 and, in immigration law parlance, became a "deportable" alien. For if he had not, he would be considered an "excludable" alien and *Zadvydas* would not apply. Prior to the Illegal Immigrant Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, there was a statutory distinction between a "deportable" alien and an "excludable" one, depending on whether the alien had made a successful entry into the United States, regardless of whether the entry was legal or illegal. *See Cuesta Martinez v. INS*, 97 F.Supp.2d 647, 649 (M.D.Pa.2000). An alien past the point of entry and physically present in the country was a deportable alien because he was entitled to a "deportation hearing." *See id.; Landon v. Plasencia*, 459 U.S. 21, 25, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). Thus, prior to the IIRIRA, aliens who entered without inspection also fell into this category of deportable aliens because they had in fact entered the country. *See Damas–Garcia v. United States*, 2001 WL 1231480, *4 n. 7 (D.N.J. Oct.17, 2001) ("A

'deportable alien' is one who has been successful in entering the United States, either legally or illegally."). Because such aliens have achieved actual entry into the United States, they have some due process rights. *See id.; Zadvydas*, 533 U.S. at 693, 121 S.Ct. 2491.

■ On the other hand, an alien detained at the border while seeking entry into the United States was entitled only to an "exclusion hearing" and was deemed an "excludable" alien prior to the IIRIRA. *Cuesta Martinez*, 97 F.Supp.2d at 649. An excludable alien may be physically allowed into the country while his admission is being considered, but under the "entry fiction"[4] is still considered to be at the border awaiting entry. *Id.* Because an excludable alien is on the same legal footing as an immigrant at the door seeking admission to the United States, he is not entitled to the same constitutional protections provided to those considered within the territorial jurisdiction of the United States. *See Mezei*, 345 U.S. at 212, 73 S.Ct. 625; *Ngo v. INS*, 192 F.3d 390, 396 (3d Cir.1999); *Ma v. Ashcroft*, 257 F.3d 1095, 1107 (9th Cir.2001); *see also Alaka v. Elwood*, 225 F.Supp.2d 547, 556 n. 44 (E.D.Pa.2002) (stating that "[e]xcludable aliens were traditionally afforded less constitutional protection than deportable aliens") (citing *Mezei*, 345 U.S. at 212, 73 S.Ct. 625).

Under the IIRIRA, in place of separate "deportation" and "exclusion" proceedings, a uniform "removal" proceeding was instituted. 8 U.S.C. § 1231. Pursuant to this scheme, the issue is no longer whether an alien has gained "entry," but whether an alien has been "admitted" into the United States. *See Ngo*, 192 F.3d at 395 n. 4.

---

4. The "entry fiction" doctrine treats an excludable alien as legally detained at the border despite his physical presence in the country. *See Fernandez–Fajardo v. INS*, 193 F.Supp.2d 877, 885 (M.D.La.2001); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953).

Thus, aliens who enter without inspection, together with "excludable" aliens who are inspected but denied admission, are now classified as "inadmissible" aliens because they were not officially admitted into the United States. *See* 8 U.S.C. § 1101(a)(13)(A); *see also Cuesta Martinez,* 97 F.Supp.2d at 649 ("[A]n inadmissible alien now includes an alien unlawfully in the country even if he has successfully entered it.").

Although the *Zadvydas* Court stated that "[w]e deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question," 533 U.S. at 682, 121 S.Ct. 2491, the assertion that *Zadvydas* is not applicable to illegal aliens who are ordered removed is incorrect. *See Jiang v. Ashcroft,* Civil No. 3:CV–01–1621, slip op. at 5 (M.D.Pa. May 28, 2002); *Zhang v. INS,* Civil No. 3:CV–00–1950, slip op. at 4 (M.D.Pa. May 23, 2002); *Zheng v. INS,* Civil No. 1:CV–01–2166, slip op. at 6 (M.D.Pa. March 12, 2002). Although the post-IIRIRA test is no longer "entry," but "admission," the *Zadvydas* Court stated that the protections of the Due Process Clause applied to those aliens, such as Lin, whose presence in the United States was illegal:

> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside our geographic borders. *But once an alien enters the country, the legal circumstances changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.*

*Zadvydas,* 533 U.S. at 693, 121 S.Ct. 2491 (citations omitted) (emphasis added); *see also Fernandez–Fajardo,* 193 F.Supp.2d at 884–85 (finding such language "imply[ing] that *Zadvydas* only places a 'reasonable time' limitation on the post-removal-period detention of aliens who have indeed entered the country.").

The Government concedes that Lin physically entered the United States without inspection in 1992. In addition, Lin was never "paroled" into the United States and thus he is not legally treated, contrary to the Government's assertion, as one who was stopped at the border not having "effected an entry" into the country. Therefore, once Lin passed the point of entry and was physically present in the United States, albeit unlawfully, he successfully "effected an entry" into the country, rendering him a "deportable" alien entitled to the protections of the Due Process Clause. *See Jiang,* slip op. at 6; *Zhang,* slip op. at 5; *Zheng,* slip op. at 6; *see also Caballero v. United States,* 145 F.Supp.2d 550, 554 (D.N.J.2001) ("[D]eportable aliens [have been] successful in gaining entry to the U.S., legally or illegally; while an inadmissible alien seeks admission into the U.S. and even if physically present is considered detained at the border."). Accordingly, the Court concludes that *Zadvydas* applies to Lin even though his entry into the United States was illegal.

On November 14, 2001, several months after the *Zadvydas* decision, the INS adopted 8 C.F.R. § 241.13. That regulation and the Service's comments make it clear that aliens such as Lin fall within the parameters of *Zadvydas.* Section 241.13 "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4[5] after the expiration of the remov-

---

5. This section governs the continued deten-      tion or release of aliens subject to a final

al period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed ... in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Section 241.13(b)(3) provides that the review procedures are inapplicable to "arriving aliens, including those who have not entered the United States, those who have been granted immigration parole into the United States, and Mariel Cubans,[6]" aliens who are still within the statutory 90–day removal period, and aliens ordered removed by the Terrorist Removal Court. Lin does not fall into any of these categories. Indeed, the Service's comments to § 241.13 state that it applies to "those [aliens] who are *present* in the United States *without inspection, admission, or parole.*" 66 F.R. 56969 (emphasis added). That is Lin's immigration status. Accordingly, based on the relevant case law and the INS's regulation, the Court holds that *Zadvydas* is applicable to Lin and that he is entitled to the due process protections set forth in that case.

## C. The Procedures of 8 C.F.R. § 241.13

■ Under *Zadvydas*, a detained alien has the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. If the alien makes such a showing, the Government must respond with evidence sufficient to rebut the alien's showing in order to continue detention. *Id.*

Lin alleges that there is no likelihood that he will be returned to China in the foreseeable future. He asserts that the INS has requested travel documents for his removal, but Chinese authorities have refused to issue them. Moreover, he claims that "it is well established that Chinese authorities refuse to issue travel documents for most of its deported nationals" and that it is his "understanding that for the last few months Chinese authorities have been refusing to issue travel documents for anybody at all." Based on those allegations, by letter dated June 27, 2002, Lin requested the INS to provide him with a post-*Zadvydas* review under 8 C.F.R. § 241.13.

In response to Lin's claim that his removal is unlikely in the reasonably foreseeable future, the Government contends that the difficulty in obtaining Lin's travel documents is not with the government of China, but with the Consulate–General in New York.[7] The Government claims that

order of removal, after the 90–day removal period has expired, and provides instructions to the INS as to the procedures for reviewing an alien's continued custody. The custody review procedures of § 241.4 "do not apply after the Service has made a determination, pursuant to the procedures provided in 8 C.F.R. § 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4).

**6.** Mariel Cubans are Cuban nationals who came to the United States via the Mariel Boatlift of 1980 and were released into the country on immigration parole because Cuba refused to accept their return. As paroled aliens, they are legally treated as if they had just arrived

at the border, despite being present in the United States for over twenty years. Accordingly, most courts have found *Zadvydas* inapplicable to the Mariel Cubans. *See, e.g., Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001); *Hoyte–Mesa v. Ashcroft*, 272 F.3d 989, 991 (7th Cir.2001); *Soto–Ramirez v. Ashcroft*, 228 F.Supp.2d 566, 572 (M.D.Pa.2002); *Herrero–Rodriguez v. Bailey*, 237 F.Supp.2d 543, 550–551 (D.N.J.2002).

**7.** The most recent communication with the Chinese Consulate–General in New York is a fax letter dated June 4, 2002, from the INS noting that Lin's passport was sent to the Consulate's office in March 2002 and the INS had yet to receive any travel documents for Lin's removal. Govt.'s Resp. Ex 1.

the "intransigence by [that] Consulate, particularly in declining to issue visas to the INS officers accompanying Lin, is purely a regional problem. The problem can and will (if necessary) be cured by transferring Lin to another INS detention facility, most probably in Louisiana."[8] In addition, based on INS statistics showing the number of Chinese aliens who were successfully returned to China from 1997 to July 2002,[9] the Government states that the "INS routinely deports Chinese nationals to the Peoples' Republic [of China]."

On the present state of the record, the Court need not reach the decision whether Lin has satisfied his burden under *Zadvydas* in demonstrating that there is no likelihood of his return to China in the reasonably foreseeable future. That determination is based on the fact that the INS has not conducted a review determination pursuant 8 C.F.R. § 241.13—the INS has not taken any action with regard to Lin's request of June 27, 2002, for a § 241.13 review.

Under 8 C.F.R. § 241.13, an eligible alien may make a written request for release to the INS HQPDU, "asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien. The alien may submit whatever documentation to the HQPDU he or she wishes in support of [that] assertion." 8 C.F.R. § 241.13(d)(1). The alien shall include within the written request information sufficient to establish that he has complied with the obligation to effect his removal and to cooperate in the process of obtaining necessary travel documents. 8 C.F.R. § 241.13(d)(2).

Within ten business days of receipt of the request, the HQPDU must provide the alien a written response acknowledging receipt of his request and explaining the procedures that will be used to evaluate the request. 8 C.F.R. § 241.13(e)(1). The HQPDU may grant an interview to the alien if such an interview would "provide assistance in rendering a decision." 8 C.F.R. § 241.13(e)(5). Factors that the HQPDU must consider include:

the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable result of those efforts, the view of the Department of State regarding the prospects for removal of aliens to the coun-

8. Lin was in fact transferred to the Tangipahoa Parish Jail in Louisiana on August 28, 2002, and has been detained there ever since. *See* Letter from Lin to United States District Court, Eastern District of Pennsylvania, dated September 5, 2002 (Document No. 4, filed September 17, 2002). To date, the Government has not provided any information that it has "cured" the "regional problem" of securing travel papers for Lin's removal since his transfer to that Louisiana facility.

9. *See* Govt.'s Supp. Memo., Ex. 1. The Court notes that statistics on the number of aliens who have been successfully removed to a certain country may not itself demonstrate that an alien will likely be removed to that country in the foreseeable future. *See, e.g., Kacanic v. Elwood*, No. CIV.A. 02–8019, 2002 WL 31520362, at *4 (E.D.Pa. Nov.8, 2002) ("[O]ther aliens having been removed to Yugoslavia in the past is not a credible indication that *this* alien will be removed in the near future.") (emphasis in original); *Ablahad v. Ashcroft*, No. 02 C 3263, 2002 WL 31027952, at *3 (N.D.Ill. Sept.6, 2002) (finding evidence that aliens have previously been deported to the petitioner's country is not sufficient to carry the government's burden under *Zadvydas* to rebut petitioner's showing that his removal is unlikely in the reasonably foreseeable future).

try or countries in question, and the receiving country's willingness to accept the alien in its territory." 8 C.F.R. § 241.13(f). The regulation further provides that the "HQPDU shall issue a written decision based on the administrative record, including any documentation provided by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances. The HQPDU shall provide the decision to the alien, with a copy to counsel of record, by regular mail." 8 C.F.R. § 241.13(g).

In this case, on June 27, 2002, Lin sent a written request to the HQPDU to review his detention under the procedures set forth in 8 C.F.R. § 241.13. Lin makes the same assertions in that request as he does in the instant Petition—that his removal to China is unlikely in the reasonably foreseeable future because China has refused to issue travel documents, despite his full cooperation with the INS's efforts, and China's refusal "to take most of its deported nationals back."

The Government argues that 8 C.F.R. § 241.13 is not applicable to Lin because he has neither applied to the HQPDU for a review of his continued detention nor made the "requisite showing" that there is no significant likelihood of his removal to China.[10] The Court disagrees. Lin applied to the HQPDU for a review of his detention on June 27, 2002. In addition, in order to initiate the review machinery of § 241.13, Lin need only "submit a written request for release to the HQPDU *asserting the basis for [his] belief* that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1) (emphasis added). Lin's request asserts the basis for his belief that there is no significant likelihood of his removal—Lin's cooperation with the INS in its efforts to obtain travel documents and China's refusal to issue such documents to him and to most of its deported nationals. The Government's argument that 8 C.F.R. § 241.13 is inapplicable to Lin is therefore without merit.

Accordingly, because 8 C.F.R. § 241.13 applies to Lin and no consideration was given to his request for release under that regulation, the Court concludes that Lin is entitled to a § 241.13 review and remands the matter to the INS for such review. *See Ablahad,* 2002 WL 31027952, at *3 ("Under § 241.13, the HQPDU must, at the alien's request, conduct a review to determine whether removal can be accomplished in the reasonably foreseeable future.").

## III. CONCLUSION

For the foregoing reasons, the Court grants Lin's Petition in part—the INS is ordered to address Lin's request for release pursuant to the procedures set forth in 8 C.F.R. § 241.13—and denies the Petition without prejudice in all other respects.

An appropriate Order follows:

## *ORDER*

**AND NOW,** this 6th day of March, 2003, upon consideration of Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Document No. 1, filed August 6, 2002), and the related submissions of the parties, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28

---

**10.** The Government also argues that 8 C.F.R. § 241.13 does not apply because Lin is an "excludable" or "inadmissible" alien. The Court has already ruled that this regulation applies to Lin because he is an alien present in the United States without inspection. *See supra* II.B.

**688**

U.S.C. § 2241 is **GRANTED IN PART AND DENIED IN PART.**

1.  The Petition for a Writ of Habeas Corpus is **GRANTED** to the extent that petitioner seeks a review determination pursuant to 8 C.F.R. § 241.13. The Immigration and Naturalization Service **SHALL** address petitioner's request for release in accordance with the procedures set forth in 8 C.F.R. § 241.13 within thirty (30) days of the date of this Order.

2.  The Petition for a Writ of Habeas Corpus is **DENIED WITHOUT PREJUDICE** in all other respects.