**Benyam HABTEGABER, A# 71 659 646 Petitioner,**

v.

**Carol JENIFER, et al Respondents.**

No. 03–70132.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 4, 2003.

Benyam Habtegaber, Monroe, MI, Pro se.

Nancy B. Pridgen, United States Attorney's Office, Detroit, MI, for Respondents.

## OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS

ROBERTS, District Judge.

### I. INTRODUCTION

This matter is before the Court on Benyam Habtegaber's Petition for Writ of Habeas Corpus. For the reasons stated below, the Court GRANTS Habtegaber's petition, subject to certain conditions of supervised release.

### II. BACKGROUND

Petitioner Benyam Habtegaber is a native of Eritrea and citizen of Ethiopia. He arrived in the United States on November 30, 1990. He was granted legal permanent resident status on August 26, 1992. He is a full time student at Eastern Michigan University and was to graduate in December of 2002 with a degree in sports medicine.

Petitioner has been convicted of several offenses. On August 22, 1997, he was convicted in the King County District Court, Seattle Division, Seattle, Washington of unlawful issuance of bad checks or drafts and was sentenced to 365 days in jail. On December 10, 1998, he was convicted in the 56th District Court in Charlotte, Michigan for the offense of "check no account" and sentenced to 30 days incarceration and 2 years of probation. On December 21, 1998, he was convicted in the 54–B District Court in East Lansing, Michigan on two counts of "check nonsufficient funds over $50 but less than $200" and sentenced to 29 days in jail and 2 years probation. Petitioner asserts that he successfully completed probation in each instance..

Petitioner applied for naturalization with the Immigration and Naturalization Service (INS) on November 21, 1997, but withdrew the application on August 11, 2000. Thereafter, on January 28, 2002, the INS Issued a Notice to Appear, charging Petitioner with being a removable alien, due to his criminal convictions. The INS brought this charge pursuant to 8 USC §§ 1227(a)(2)(A)(ii) and (iii) of the Immigration and Nationality Act (INA).[1] The INS took Petitioner into custody on January 28, 2002, pending proceedings before an Immigration Judge. On July 9, 2002, an Immigration Judge found that petitioner was removable as charged and ordered him removed to Ethiopia.[2]

---

1. 8 USC §§ 1227(a)(2)(A)(ii) and (iii) provide that an alien who is convicted of two or more crimes involving moral turpitude or commits an aggravated felony, respectively, is deportable.

2. The document attached by the Respondent as evidence of the Immigration Judge's ruling is of poor quality. Apparently, however, there is no apparent dispute regarding the ruling.

Petitioner initially waived his right to appeal the order of removal to the Board of Immigration Appeals (BIA). However, per Respondent, on August 5, 2002, Petitioner filed an appeal with the BIA alleging that his original waiver of appeal was not knowing and voluntary. Petitioner withdrew his appeal on September 5, 2002.

## III. ARGUMENTS OF THE PARTIES

Petitioner asserts that the order of removal became final on July 9, 2002, and cites to *Zadvydas v. Davis*, 533 U.S. 678, 700–701, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), which held that 6 months is a presumptively reasonable amount of time to allow the government to accomplish an alien's removal. Petitioner asserts that the six-month period ran on January 9, 2003. Therefore, Petitioner asserts that he is entitled to be released subject to supervision as set forth in 8 USC § 1231(a)(3)[3] and 8 CFR 241.5[4]. In his two-count petition, Petitioner contends that his continued detention violates 8 USC § 1231(a)(6)[5] and his Fifth Amend-

---

**3.** 8 USC § 1231(a)(3) states:

(3) Supervision after 90–day period
If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—
(A) to appear before an immigration officer periodically for identification;
(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

**4.** 8 CFR 241.5 states:

(a) Order of supervision. An alien released pursuant to § 241.4 shall be released pursuant to an order of supervision. The Commissioner, Deputy Commissioner, Executive Associate Commissioner Field Operations, regional director, district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer-in-charge may issue Form I220B, Order of Supervision. The order shall specify conditions of supervision including, but not limited to, the following:
(1) A requirement that the alien report to a specified officer periodically and provide relevant information under oath as directed;
(2) A requirement that the alien continue efforts to obtain a travel document and assist the Service in obtaining a travel document;
(3) A requirement that the alien report as directed for a mental or physical examination or examinations as directed by the Service;
(4) A requirement that the alien obtain advance approval of travel beyond previously specified times and distances; and
(5) A requirement that the alien provide the Service with written notice of any change of address on Form AR–11 within ten days of the change.
(b) Posting of bond. An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient to ensure compliance with the conditions of the order, including surrender for removal.
(c) Employment authorization. An officer authorized to issue an order of supervision may, in his or her discretion, grant employment authorization to an alien released under an order of supervision if the officer specifically finds that:
(1) The alien cannot be removed because no country will accept the alien; or
(2) The removal of the alien is impracticable or contrary to public interest.

**5.** 8 USC § 1231(a)(6) states:
(6) Inadmissible or criminal aliens
An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

ment substantive and procedural due process rights, because the INS has been unable to remove him to Ethiopia or any other country. Petitioner argues that he meets all of the statutory requirements for release: he is not a threat to the community or a flight risk.[6]

In an effort to cooperate with efforts to remove him from the United States, Petitioner has contacted the Eritrean and Ethiopian embassies requesting travel documents. He has also contacted the embassies in Sweden, the Netherlands and Royal Danish requesting asylum. Per Petitioner, a consul at both the Eritrean and Ethiopian embassies orally denied his request for travel documents. Petitioner asserts that he was denied by the Eritrean consul because he is unable to produce documents (a birth certificate or national identity card) proving his citizenship. He states that he was denied by the Ethiopian consul because Eritrea has gained its independence from Ethiopia and, therefore, Petitioner is no longer considered an Ethiopian citizen.

Petitioner attaches a letter from the Netherlands advising that aliens are only allowed to reside there with a residence permit if their presence serves essential Dutch interests or there are urgent humanitarian concerns. The Vice Consul further states that neither of these reasons appears to apply in Petitioner's case, but directs him to a website setting forth the requirements for obtaining refugee status. The response from the Danish Consular advised that Petitioner cannot receive an application for asylum under Danish law, but referred him to the United Nations High Commissioner for refugees. A letter from Sweden advises that Petitioner can only apply for asylum at a police station there.

Respondent Carol Jenifer, District Director of the INS, objects to Petitioner's release, arguing that the presumptive six-month period has not expired. Respondent asserts that the BIA "dismissed" Petitioner's appeal on September 5, 2002 and, therefore, the order of removal did not become final until that date. Respondent contends that the INS has been working to obtain the necessary travel documents to return Petitioner to Ethiopia. However, the INS has yet to receive a response from the Ethiopian or Eritrean embassies to its written inquiries dated July 26, 2002. Respondent asserts that the INS should be given the full six-month period to attempt to effectuate Petitioner's removal, via negotiations with the Ethiopian consulate.

Citing *Zadvydas*, Respondent further argues that Petitioner is not automatically entitled to a release from detention at the end of the six-month period. Rather, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701, 121 S.Ct. 2491. Respondent contends that this case is analogous to *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002), in which the court stated that, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but

---

**6.** Petitioner argues that Respondent cannot assume that lawful permanent residents convicted of crimes under § 1226(c) are dangerous without an individualized determination of dangerousness. In support, he cites Judge Gadola's ruling in July 2002 that his mandatory detention during deportation proceedings, without an individualized determination of the flight risk or danger to the public, violated his 5th Amendment right to substantive due process. *Habtegaber v. Jenifer*, 213 F.Supp.2d 792, 801 (2002). However, Judge Gadola's opinion was subsequently vacated, under a joint petition from the parties, and Petitioner's petition for a writ of habeas corpus was dismissed. *Habtegaber v. Jenifer*, 222 FSupp 2d 922 (2002).

also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." The petitioner in *Akinwale* had only been in post-removal order detention for four months and had failed to present facts showing that his removal could not be effectuated. 287 F.3d at 1051–1052.

## IV. ANALYSIS

Once an alien is ordered removed, the Immigration and Nationality Act (INA) states that the Attorney General is obligated to effect the removal within 90 days. 8 USC § 1231(a)(1)(A). After an order of removal becomes final and during the 90–day removal period, aliens must be held in custody.[7] 8 USC § 1231(a)(2). However, an alien may be detained beyond the 90 day period if he/she is inadmissible (under 8 USC § 1182), removable (under certain provisions of 8 USC § 1227) or has been determined to be a risk to the community or unlikely to comply with the order of removal. 8 USC § 1231(a)(6).

Recently, the United States Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) held that detention under § 1231(a)(6) may not continue indefinitely. Rather, the Court held that six months (from the date the order of removal becomes final) is a presumptively reasonable period of detention to secure an alien's removal from the United States. *Id* at 700–701, 121 S.Ct. 2491. The Court held, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id* at 699, 121 S.Ct. 2491.

■ Therefore, the Court instructs habeas courts to determine whether the detention exceeds a period reasonably necessary to secure removal. *Id.* The Court further stated:

> [Habeas courts] should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.

*Id* at 699–700, 121 S.Ct. 2491. The Court went on to state that its holding does not require district courts to automatically release every alien upon expiration of the six-month term. *Id* at 701, 121 S.Ct. 2491. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

■ The burden of establishing that there is no significant likelihood of removal in the reasonably foreseeable future is on the movant.[8] *Id.* The government must then produce evidence to rebut the movant's showing. *Id.*

---

**7.** Under 8 USC § 1231(a)(B), the removal period begins on the latest of the following:
(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**8.** The Court rejected the Fifth Circuit's holding that an alien must prove that deportation is "impossible." 533 U.S. at 702, 121 S.Ct. 2491.

■ In this case, the Court finds that the presumptively reasonable six-month period of detention has run. Respondent improperly characterizes the BIA's actions on September 5, 2002, with regard to Petitioner's appeal, as a "dismissal." The BIA's Order, in fact, only acknowledged that Petitioner's appeal was withdrawn and stated that the record would be returned to the Immigration Court without further action. In noting the withdrawal, the BIA references 8 CFR § 3.4, which states in relevant part:

In any case in which an appeal has been taken, the party taking the appeal may file a written withdrawal thereof with the office at which the notice of appeal was filed. If the record in the case has not been forwarded to the Board on appeal in accordance with § 3.5, the decision made in the case shall be final to the same extent as if no appeal had been taken. If the record has been forwarded on appeal, the withdrawal of the appeal shall be forwarded to the Board and, if no decision in the case has been made on the appeal, the record shall be returned and the initial decision shall be final to the same extent as if no appeal had been taken. If a decision on the appeal has been made by the Board in the case, further action shall be taken in accordance therewith.

(emphasis added). Under the express language of 8 CFR § 3.4, where no decision was made on the appeal by the BIA, prior to the withdrawal, the initial decision is considered the final one "as if no appeal had been taken."

There is no evidence here that the BIA rendered a decision prior to Petitioner's withdrawal of his appeal. Therefore, 8 CFR 3.4 governs, and the decision rendered by the Immigration Judge on July 9, 2002 was a final order. Consequently, Petitioner is correct in his assertion that the presumptive six-month period under *Zadvydas* expired on January 9, 2003.

The Court must, therefore, determine whether Petitioner has shown that there is no significant likelihood of his removal in the foreseeable future and, if so, whether Respondent has presented sufficient evidence to rebut Petitioner's showing. *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. The Court finds that the Petitioner has made the requisite showing and that the Respondent has failed to come forward with any evidence to the contrary.

■ Petitioner has attached copies of letters that he sent to the embassies in Eritrea, Ethiopia, Sweden, the Netherlands and Royal Danish seeking travel documents or political asylum. In his Petition, he further asserts that, when he received no response from Eritrea and Ethiopia, he followed up with a telephone call to each consulate and was advised that his request was denied. Pet, ¶ 16. While written responses from Sweden, the Netherlands and Royal Danish invite Petitioner to apply for asylum, the consul in the Netherlands implied that approval of such an application is remote and Sweden advises that it will only accept applications made in person.

Respondent, likewise, admits that neither Eritrea nor Ethiopia has responded to the INS' July 2002 request for travel documents. There is no evidence that the INS has attempted to follow up on its July correspondence to Eritrea and Ethiopia or that it has otherwise taken any additional steps to secure Petitioner's removal.

Nevertheless, Respondent urges the Court to continue Petitioner's detention to give the INS additional time to "negotiate" with Ethiopia for Petitioner's return. However, Respondent has not presented any evidence that cooperation from Ethiopia, Eritrea or any other country is expected in the near future or at all. Therefore,

Respondent has failed to establish that additional negotiating time is likely to be fruitful.[9]

## V. CONCLUSION

The Court finds that the presumptively reasonable six-month period for Petitioner's detention has run. Further, the Court finds that the Petitioner's uncontroverted evidence satisfies his burden of showing that there is no significant likelihood of his removal in the foreseeable future. Therefore, his detention is no longer authorized by the INA. Accordingly, the Court GRANTS Petitioner's Petition for Writ of Habeas Corpus and orders Respondent to release him subject to supervision under 8 USC § 1231(a)(3)[10] and regulations prescribed by the Attorney General.

**IT IS SO ORDERED.**

---

**9.** Contrary to Respondent's assertions, Petitioner here is distinguishable from the petitioner in *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir.2002). Unlike the petitioner in *Akinwale*, Petitioner here has been detained for over six months and he has presented facts indicating that the INS is incapable of removing him to Ethiopia in the near future.

**10.** 8 USC § 1231(a)(3) states:

(3) Supervision after 90–day period
If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney Gener-

al. The regulations shall include provisions requiring the alien—
(A) to appear before an immigration officer periodically for identification;
(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.