**Chris Gisto NMA Petitioner,**

v.

**Tom RIDGE, Hon., Secretary, Homeland Security, et al., Respondents.**

**No. CIV.A. 03–3446.**

United States District Court, E.D. Pennsylvania.

Oct. 3, 2003.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

INTRODUCTION

The petitioner, Chris Gisto Nma, is a citizen of Liberia who arrived in New York in October of 1990 as a stowaway. Petitioner is currently detained pending deportation from the United States to Liberia pursuant to a final order of removal. Defendants are the Honorable Tom Ridge, Secretary of the Department of Homeland Security, and William F. Riley, Jr., Interim District Director of the Bureau of Immigration and Customs[1] (the "Government"), who are responsible for petitioner's detention. Presently before the court is petitioner's request for a writ of habeas corpus challenging the Government's authority to detain him in aid of his removal from the United States. For the reasons that follow, the request for the issuance of the writ will be denied.

I. BACKGROUND

Chris Gisto Nma, Berks County Prison, Leesport, PA, pro se.

Matthew D. Baxter, Law Offices of Bespalov & Avrutsky, P.C., Huntingdon Valley, PA, for Chris Gisto Nma, Petitioner.

Paul G. Shapiro, U.S. Attorney's Office, Philadelphia, PA, for Tom Ridge, Hon., Secretary, Homeland Security, William F. Riley, Jr., Interim District Director, Bureau of Immigration & Customs, Respondents.

Petitioner filed an Application for Asylum and Withholding of Deportation with the Immigration and Naturalization Service ("INS") in April of 1992. On May 17, 1995, while the Application for Asylum was pending, Nma was arrested for conspiracy to obtain fraudulent immigration documents. Nma later pled guilty to the conspiracy charge and was sentenced to 5 months/time served. On December 29, 1995, Nma was returned to INS custody after completing his federal sentence.

1. Effective March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions were transferred to the newly formed United States Department of Homeland Security ("DHS"). As of that date, the Bureau of Immigration and Customs Enforcement ("BICE"), a subordinate agency within the DHS, assumed the enforcement functions of the former INS. *Beshli v. Department of Homeland Security*, 272 F.Supp.2d 514, 516 (E.D.Pa.2003). Since the transition is irrelevant for the purpose of evaluating Nma's habeas petition, the court shall refer to the INS instead of the BICE throughout this memorandum.

On August 1, 1995, the INS charged Nma with having entered the U.S. unlawfully and having been convicted of a felony. Based on the charge, the INS sought Nma's removal from the United States. On August 25, 1996, an Immigration Judge denied the petitioner's Asylum Application and ordered Nma deported to Liberia. The Immigration Judge also denied Nma's request for bond, concluding that Nma was a flight risk and a danger to the community at large. On April 24, 1997, the Board of Immigration Appeals (BIA) dismissed Nma's appeal of the Immigration Judge's denial of his petition for asylum and the order for Nma's removal became administratively final on that date.

On June 2, 1997, a travel document for Nma's removal was issued by the Liberian authorities.[2] However, although the Government was authorized to deport the petitioner at that time (because there was no stay of removal in place), in light of Nma's appeal to the BIA to reopen its dismissal of his previous appeal, the Government made an administrative decision not to do so at that time, and Nma remained in INS custody. On August 17, 1999, after all of his appeals were exhausted, petitioner was released under an order of supervision on a $7500 bond.

On October 24, 2002, Nma reported to INS offices in New York for a review of his status as required under supervised release. On November 14, 2002, he received a letter asking him to surrender to custody at INS offices in New York City. Pursuant to the request, petitioner voluntarily surrendered and was detained for removal from the U.S. On January 24, 2003, Nma was again informed that he was being considered for release and was asked to submit documents in support of his release. Although Nma supplied supporting documentation as requested, he was not released.

On or about May 20, 2003, while in custody, Nma wrote to the INS asking for a custody review and to be released on bond pending his removal. A custody review of Nma's case completed on July 3, 2003 concluded that Nma would not be released "until he provide[d] documentation as to his identity and citizenship or cooperate[d] fully with Embassy personnel." (*See* Government's Exhibit "G" at 6.)

Since Nma's return to INS custody in November of 2002, the Government has attempted to procure a travel document for Nma from the Liberian government. At first, the Liberian government refused to supply the document without proof that Nma is a Liberian citizen (i.e. a birth certificate or other proof of citizenship or nationality). Later, on August 18, 2003, the Liberian Consulate informed the government that it would, indeed, issue the travel document for Nma. In fact, by a letter dated August 26, 2003, Officer William S. Salley, Consul to the Liberian Embassy, informed the petitioner that a travel document for Nma would be issued after the Interim Government was installed in Liberia, reportedly on October 14, 2003.

Petitioner filed this petition for habeas corpus relief on June 2, 2003 along with a motion for a preliminary injunction ordering his release pending the adjudication of the writ of habeas corpus. In his petition, Nma argues that because he has been detained more than six months under a final order of removal (after the expiration of the 90–day period during which release is not permitted under the statute), and

---

**2.** Apparently, this was the second travel document issued for the petitioner's removal. According the Government, the first travel document was issued before Nma was in INS custody and the government is unable to explain the circumstances under which it was issued. (Transcript page 4.)

there is no significant likelihood of his removal in the foreseeable future, he should be released from detention pending his eventual removal, pursuant to the Supreme Court's opinion in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

Petitioner bases his argument that there is no significant likelihood in the reasonably *foreseeable* future on the current civil unrest in Liberia. Petitioner contends that because Liberia is currently in chaos, despite the representations by the Liberian Consulate that it will issue a travel document for Nma, the issuance of a travel document in the near future is unlikely, especially considering how long it has taken for action thus far. Petitioner argues that in light of the fact that he has been detained for almost 4 years altogether awaiting removal (counting both his previous and current detention), the uncertainty of when, if ever, Liberia will issue the travel document cannot support a finding that there is a "significant" likelihood that he will be removed in the reasonably foreseeable future.

The Government responds, in the first instance, that the Supreme Court's decision in *Zadvydas v. Davis*, recognizing certain constitutional protections for admitted aliens against indefinite detention, does not apply to Nma because he arrived in the U.S. as a stowaway, and hence is not an "admitted" alien. Further, the Government argues that even if the protections in *Zadvydas* do apply to Nma, petitioner cannot meet his burden under *Zadvydas* because he has not been detained for six full months within which he has provided complete cooperation in obtaining a travel document, and, most importantly, because petitioner's removal is

reasonably foreseeable since the Liberian government has stated that they intend to issue a travel document to the petitioner in the near future.

## II. Analysis

### A. *Jurisdiction*

■ The court has jurisdiction to hear this federal habeas corpus petition pursuant 28 U.S.C. § 2241 (1994). Jurisdiction extends to questions of law but does not extend to factual or discretionary determinations of the government. *See* 8 U.S.C. § 1252(a)(2)(B)(ii)(1994) ("[N]o court shall have jurisdiction to review" any decision or action "specified . . . to be in the discretion of the Attorney General."). In his petition, Nma challenges the government's legal authority to keep him detained under the laws of the United States.

The legal question before the court is whether the Supreme Court's decision in *Zadvydas v. Davis* applies when an alien detainee's country of origin has agreed to take the detainee back but it is uncertain when the removal can be effectuated due to political unrest in the country of origin. The specific task at hand is to determine whether, under these circumstances, the future length of petitioner's detention in aid of removal from the U.S. may be deemed reasonably foreseeable so as to avoid the constitutional implications of indefinite or possibly permanent detention.

### B. *The Merits*

#### 1. *Is* Zadvydas *applicable to Nma's detention?*

In *Zadvydas*, the Supreme Court addressed the constitutional implications of the detention of two aliens, who had been "admitted to United States"[3] but were to

---

**3.** 8 U.S.C. § 1101(13)(A) defines an "admitted" alien as an alien who has effected lawful

entry into United States after inspection and

be deported based on criminal convictions. *Zadvydas,* 533 U.S. at 684–85, 121 S.Ct. 2491. Because no country would accept the aliens' repatriation, their detention by the INS in aid of removal from the U.S. was indefinite and potentially permanent. *Id.* at 685–86, 691, 121 S.Ct. 2491. Finding the aliens' indefinite detention constitutionally problematic, the Court construed the relevant immigration statute authorizing post-removal-period detention, 8 U.S.C. § 1231(a)(6), to require that detention in those situations be limited to a period reasonably necessary to secure removal. *Id.* at 699, 121 S.Ct. 2491. For the sake of uniform administration, the Court recognized that a 6–month post-removal-period detention would be presumptively reasonable under the statute. *Id.* According to the Court, permitting indefinite detention of aliens, would raise "a serious constitutional problem." *Id.* at 690, 121 S.Ct. 2491.

*Zadvydas* involved admitted aliens. The petitioner in this case is not an admitted alien, but rather was found illegally in this country. The threshold issue is thus, does the *Zadvydas* teachings apply equally to aliens illegally found in the United States.

Courts are divided on the issue of whether *Zadvydas* is limited to admitted aliens. The majority of courts have construed the constitutional protections in *Zadvydas* to apply only to aliens that have been properly admitted into the United States. *See, e.g., Borrero v. Aljets,* 325 F.3d 1003 (8th Cir.2003); *Rios v. INS* 324 F.3d 296 (5th Cir.2003) (per curiam); *Hoyte–Mesa v. Ashcroft* 272 F.3d 989 (7th Cir.2001); *Pan v. Ashcroft,* No. 02–2712, 2002 WL 1497115, at *2 (E.D.Pa. July 8, 2002).

A few courts have come to the opposite conclusion, finding that the constitutional protections mandated in *Zadvydas* are applicable to *all* aliens, whether present in the U.S. legally or not. *See, e.g., Rosales–Garcia v. Holland,* 322 F.3d 386 (6th Cir. 2003) (finding that the Due Process Clause of the Fifth and Fourteenth Amendment applies to all aliens, including excludable aliens, and citing *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), for the proposition that all persons within the territorial jurisdiction of the U.S. are entitled to equal protection of the laws); *Xi v. INS,* 298 F.3d 832 (9th Cir.2002) (finding that, because the statute at issue does not make exceptions for inadmissible aliens and the Supreme Court has interpreted that statute to prohibit indefinite detentions without qualification, the protections of *Zadvydas* must apply to inadmissible aliens); *Lin v. Ashcroft,* 247 F.Supp.2d 679, 684 (E.D.Pa.2003). The Third Circuit Court of Appeals has yet to address this issue.[4]

The court need not decide that issue because, even if the court assumes that *Zadvydas* is applicable here, the petitioner has failed to meet his burden under *Zadvydas.*[5]

---

authorization by an immigration officer. 8 U.S.C. § 1101(13)(A) (Supp V.1999).

4. Although the Third Circuit has not addressed the issue as of yet, a district court case finding that *Zadvydas* applied to an alien that entered the country illegally, *Lin v. Ashcroft,* 247 F.Supp.2d 679, 684 (E.D.Pa.2003), is currently on appeal to the Third Circuit. Previously, another district court in the Eastern District of Pennsylvania had held that *Zadvydas* had no application to an illegal

alien with a criminal record. *Pan v. Ashcroft,* No. 02–2712, 2002 WL 1497115, at *2 (E.D.Pa. July 8, 2002). That case was affirmed by the Third Circuit in an non-precedential decision. *Pan v. Ashcroft,* 64 Fed. Appx. 851 (3rd Cir. March 18, 2003).

5. However, if the *Zadvydas* case is not applicable to aliens who are not "admitted" into the United States, assuming Nma is an inadmissible alien, then the constitutionality of Nma's continued indefinite detention is con-

### 2. *The removal statute and* Zadvydas

Under the immigration statutory scheme, once an alien is ordered to be removed from the United States, the Attorney General must remove the alien within ninety (90) days after the order for removal becomes "administratively final." 8 U.S.C. § 1231(a)(1)(B)(i) (Supp V 1999). During those ninety days, known as the "removal period," detention of the alien is mandatory. § 1231(a)(2). At the conclusion of the removal period, if an alien has not been removed, the Attorney General may continue to detain any alien who is inadmissible under 8 U.S.C. § 1182, who has violated criminal laws, who threatens national security, or who is deemed by the Attorney General to be "a risk to the community or unlikely to comply with the order for removal." [6] § 1231(a)(6).

■ The Supreme Court, in *Zadvydas v. Davis*, construed § 1231(a)(6) to require that any alien detained beyond the removal period should only be detained for a period reasonably necessary to effectuate that alien's removal from the United States. *Zadvydas*, 533 U.S. at 689, 121 S.Ct. 2491. The Court found that detention up to six months from the end of the removal period is presumptively reasonable under the statute. *Id.* at 700–01, 121 S.Ct. 2491. In order for a court to find that detention beyond the six month period after the removal period has lapsed is unreasonable, the alien must provide "good reason that there is no *significant likelihood* of removal in the *reasonably foreseeable future*"; [and] the government must then provide "evidence sufficient to rebut [the detainee's] showing". *Id.* at 701, 121 S.Ct. 2491 (emphasis added). Therefore, an alien may be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Applying *Zadvydas*, the court must decide whether Nma has met his burden of providing "good reason" that there is no significant likelihood of his removal to Liberia in the reasonably foreseeable future.

### 3. *Application of* Zadvydas *to Nma's Petition* [7]

■ The petitioner has been in INS custody since November 14, 2002, a period of 9 months, well past the 6–month threshold for the presumption of reasonableness

---

trolled by the Third Circuit's pre-*Zadvydas* opinion in *Ngo v. INS*, 192 F.3d 390 (3rd Cir.1999). The Third Circuit's decision in *Ngo* essentially allows for the indefinite detention of an alien that is not presently removable unless there is *no* possibility of removal. *Id.* at 397.

**6.** Under § 1182(a)(6)(D), any alien who is a stowaway is inadmissible, i.e. ineligible for admission into the United States. Under § 1227(a)(2)(A)(ii) any alien that has been convicted of a crime for which a sentence of one (1) year or more may be imposed is deportable. Because Nma arrived in the U.S. as a stowaway and plead guilty to conspiracy to obtain fraudulent immigration documents, a crime punishable by up to 25 years imprisonment, he falls under the umbrella of aliens that may be detained by the Attorney General

beyond the 90–day removal period under 1231(a)(6). (*See* Govt Ex. "C" at 3–4.)

**7.** The Government contends that this Court should find that, in the event that *Zadvydas* does apply to Nma, he has not passed the 6–month mark of presumptively reasonable detention because has not been cooperative with the Government in obtaining a travel document from Liberia. Because the Court finds that Nma has failed to meet his burden of proving that there is no significant likelihood of removal in the reasonably foreseeable future, and because the Liberian government, in any event, has agreed to issue a travel document to petitioner, the issue of whether there is a need for equitable tolling of the 6–month period in this case is now moot. Thus, the court will assume that Nma's detention has surpassed the 6–month threshold.

to apply.[8] The court finds, however, that under the circumstances of the case, petitioner has failed to show that there is no significant likelihood of removal to Liberia in the reasonably foreseeable future.

First, petitioner's contentions in this case that removal is at best uncertain run counter to the affirmation of the Liberian Consulate that it intends to issue a travel document to the petitioner. That, as a practical matter, the Consulate cannot do so until the Interim Government is in place in Liberia on October 14, 2003, does not negate Liberia's stated intention to repatriate petitioner. Second, the bona fides of the Consulate's repatriation representation is underscored by the fact that the Liberian government has twice issued a travel document to petitioner in the past.

Courts that have addressed the issue of whether there is a significant likelihood removal of a detainee in the reasonably foreseeable future have found "no significant likelihood of removal" in four types of cases. One, where *no* country will accept the detainee, *see, e.g., Habtegaber v. Jenifer*, 256 F.Supp.2d 692, 697 (E.D.Mich. 2003), two, where the detainee's country of origin refuses to issue a travel document for the detainee, *see, e.g., Rajigah v. Conway*, 268 F.Supp.2d 159, 166 (E.D.N.Y. 2003); *Shefqet v. Ashcroft*, No. 02–C7737, 2003 WL 1964290, *3 (N.D.Ill. April 28, 2003), three, where there is no removal agreement between the detainee's country of origin and the U.S., *see, e.g., Jardines–Guerra v. Ashcroft*, 262 F.Supp.2d 1112, 1115 (S.D.Cal.2003), and four, where there was no definitive answer from the target country after several months as to whether it would issue travel papers for a detainee, *see Kacanic v. Elwood*, No. 02–8019, 2002 WL 30520362, *10–11 (E.D.Pa. November 8, 2002). All four cases are distinguishable in that here, Liberia has stated an intention to repatriate petitioner and, in fact, has issued documents to that effect on two prior occasions. *Cf. Seretse–Khama v. Ashcroft*, 215 F.Supp.2d 37, 46–48 (D.D.C. 2002) (holding that there was no significant likelihood of removal of detainee to Liberia in a case in which (1) the alien had been detained over 3 years; (2) the INS had no success in obtaining a travel document in that time; *and* (3) the Liberian embassy had specifically expressed its refusal to send detainee back to Liberia because detainee had no ties to Liberia, i.e. family or ability to speak the language).

Petitioner, however, urges the court to look beyond the bald representations made by the Liberian Consulate and examine for itself the political situation in Liberia. Because of the civil unrest in Liberia at this time, petitioner urges the court to find that the Liberian government will not be stable enough in the near future to issue a travel document at any time in the reasonably foreseeable future. That Liberia is currently in turmoil is uncontroverted and, of course, there is no guarantee that the interim government will take over in Liberia on October 14, 2003, or that even if it does so on schedule, it will have the power or the inclination at the time to repatriate petitioner. For the court to conclude that repatriation is not significantly likely in the reasonably foreseeable future because of these uncertainties, however, would be speculation. Should this grim scenario crystalize, petitioner may return to the U.S. immigration authorities or to this court at a later date for a renewed applica-

---

**8.** Under 8 U.S.C. § 1231(a)(1), the 90–day period in which the statute bars the release of aliens subject to removal was satisfied during petitioner's confinement from April 24, 1997 to August 17, 1999, given that both the earlier detention and the latest one are pursuant to the same administrative order of removal.

tion for relief upon a supplemental record.[9]

The court thus concludes that petitioner has not met his burden under *Zadvydas* to show that there are institutional and/or individual barriers to his removal. *See, e.g., Fahim v. Ashcroft,* 227 F.Supp.2d 1359 (N.D.Ga.2002).

## III. CONCLUSION

Based on the foregoing analysis, the court concludes that the plaintiff has failed to satisfy his burden under *Zadvydas* to provide good reason that there is no significant likelihood of removal in the reasonably foreseeable future. Accordingly, the petitioner's writ of habeas corpus shall be denied.

An appropriate order follows.

### ORDER

**AND NOW,** on this 3rd day of October, 2003, upon consideration of Chris Gisto Nma's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (doc. no. 1), the Government's memorandum in opposition thereto (doc. no. 8), petitioner's reply to the Government's response (doc. no. 9), and additional evidence presented by the parties at a hearing on the merits of petitioner's petition, it is hereby **ORDERED** that petitioner's petition for habeas corpus relief under 28 U.S.C. § 2241 (doc. no. 1) is **DENIED.**

**AND IT IS SO ORDERED.**

---

**9.** The petitioner further argues that the court should find Nma's possible deportation in the future not *"reasonably* foreseeable," because of the length of his detention. The petitioner reminds the Court that, in *Zadvydas,* the Supreme Court stated that "for detention to remain reasonable, as the period for confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491. In that vain, petitioner urges the Court not to look at Nma's most recent detention in a "vacuum" but rather consider the four (4) years Nma was previously detained before the INS released him on a order of supervision in 1999. (Tr. at 3.) Since there is no indication when Liberia will be functional enough to issue the travel document, petitioner contends that the seemingly indefinite time that Nma will continue to be detained while waiting is not reasonable in light of how long he has been detained already.

It is not clear to the court, nor does the court necessarily agree, that the length of the petitioner's detention should be aggregated to include time he was detained prior to his release on an order of supervision. Each detention had its own particular set of circumstances. However, even assuming that the court aggregates the length of petitioner's detention and finds that petitioner has been detained for more than four years, that would not help the petitioner's case, a case in which Liberia has stated that it intends to issue a travel document to petitioner (as of August 26, 2003) and one in which the court finds that the petitioner has failed to put forth good reason that there is no significant likelihood of removal in the reasonably foreseeable future. Of course, should Liberia's representations as to petitioner's repatriation prove to be illusory, then the total length of his detention may become relevant to the court's calculation of whether removal is significantly likely in the reasonably foreseeable future.